IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


DARRELL TYRONE HENDERSON,           :

     Plaintiff,                     :

vs.                                 :   CIVIL ACTION 07-00167-CG-B

STATE OF ALABAMA, *et al.*,         :

     Defendants.                    :


## REPORT AND RECOMMENDATION

    Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a Complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief can be granted.[1]

**I.  Amended Complaint. (Doc. 36).**

    The amended complaint is a superseding amended complaint filed on the Court's complaint form pursuant to Court order.  (Doc. 36). The amended complaint contains all the information Plaintiff wants to present to the Court from his complaint and numerous other

---

[1]Since filing this action, Plaintiff has been released from incarceration.  (Doc. 26, filed Feb. 11, 2008).

amendments.   (See Docs. 1, 3, 5, 8, 24, 28 & 32).   Plaintiff identifies as Defendants Roderick Davis, a probation officer; Robert Kendall, a deceased Circuit Court Judge for Mobile County, Alabama; Sarah Hicks Stewart, a Mobile County Circuit Court Judge; Deborah Tillman, an Assistant District Attorney for Mobile County, Alabama; Thomas Walsh, Plaintiff's criminal defense counsel; and Pamela Pettis, a probation officer. (Id. at 10-12).

The following is a description of Plaintiff's claims. Plaintiff alleges that on January 2, 1999, he was arrested and charged with theft of property, first degree. (Id. at 9). After being booked, Plaintiff was placed in a holding cell because he was unable to make bond. (Id.). On the same date, Brad Faulk, operator of South Bonding Company, confronted Plaintiff's wife, Bebette Henderson, and told her that he had watched a video tape from a pawn show which showed Plaintiff and his wife pawning a diamond tennis bracelet which belonged to Mr. Faulk's wife. (Id. at 4 & 9). He told Plaintiff's wife that Plaintiff "had been arrested for it," (presumably, theft of property, first degree). (Id. at 4). As a result, Plaintiff's wife turned herself in and was charged with receiving stolen property. (Id.). She was later released after Mr. Faulk paid her bond. (Id.).

Plaintiff remained in the Mobile County Metro Jail (hereinafter "jail") until his arraignment on January 11, 1999. At the arraignment, the assistant district attorney, James Brandyburg,

2

offered Plaintiff a plea agreement of three years probation with restitution. (<u>Id.</u> at 5). Plaintiff's court-appointed attorney, Habib Yazdi, recommended that Plaintiff take the plea bargain. (<u>Id.</u>). When Plaintiff was about to enter his guilty plea, his wife and Mr. Faulk interrupted to say that the tennis bracelet had been returned. (<u>Id.</u>). Mr. Brandyburg asked that the hearing be re-set for the following day in order to confirm the return of the stolen bracelet. (<u>Id.</u>). Plaintiff's attorney told him that the court did not want Plaintiff to pay for something that had been returned. (<u>Id.</u>). Mr. Brandyburg confirmed the return of the bracelet and the "case was settled that day[,]" January 12, 1999. (<u>Id.</u>). Plaintiff was sentenced to a term of three years' probation. (<u>Id.</u> at 5-6).

On February 4, 1999, Plaintiff reported to his probation officer, Defendant Roderick Davis. (<u>Id.</u> at 6). According to Plaintiff, he was told that his term of probation would end December 29, 2001, but no later than January 11, 2002. (<u>Id.</u>). While on probation, Plaintiff was arrested once by Defendant Davis. (<u>Id.</u>). Plaintiff was arrested on July 6, 2000, and was released on July 26, 2000, by Defendant Davis without a court proceeding. (<u>Id.</u>). According to Plaintiff, it was determined that his arrest was the result of prank complaint lodged by his sister, Doshell Henderson. (<u>Id.</u>).

Plaintiff was arrested again on September 11, 2002 for "domestic" after his wife made a phone call to the Mobile Police

Department.  (Id.).  While Plaintiff was incarcerated at the jail,
Defendant Davis placed a probation hold on him.  (Id.).  Plaintiff
identifies this incarceration as the first instance of wrongful
imprisonment and contends that at the time of this arrest, he had
already finished serving his probation sentence, which allegedly
ended on January 11, 2002, without a violation.  (Id.).

During Plaintiff's incarceration at the jail on the domestic
offense, he was taken before Defendant Judge Kendall on September
17, 2002.  (Id. at 7).  Prior to Plaintiff's appearance before
Defendant Judge Kendall, Plaintiff's wife had gone to Defendant
Davis's office and had told him that "she had [Plaintiff] arrested
on a false claim."  (Id.).  When Plaintiff appeared in court,
Defendant Judge Kendall asked Plaintiff the amount of time he had
to serve on his probation sentence.  (Id.).  Defendant Davis told
Defendant Kendall that "actually his time is up[;] it's just a
matter of [Plaintiff's] fines."  (Id. at 7).  Nonetheless,
Defendant Kendall "re-instate[d]" Plaintiff's alleged three-year
probation sentence.  (Id.).  Plaintiff contends that this is his
second wrongful imprisonment.  (Id.).

According to Plaintiff, after he began serving his "re-
instated" sentence, Defendant Davis removed Plaintiff's case from
his caseload and transferred Plaintiff's case to Defendant Pettis'
caseload.  (Id.).  On October 25, 2006, Plaintiff was arrested by
City of Mobile police officers and charged with burglary, third

degree. (Id. at 7-8). Plaintiff was taken to jail where Defendant
Pettis placed a hold him. (Id. at 8). On December 14, 2006,
Plaintiff was taken before Defendant Judge Stewart. (Id.). His
court-appointed attorney, Defendant Walsh, was present, as was the
prosecutor, Defendant Tillman. (Id.). No probation officer
appeared. (Id.). Plaintiff asserts that at this hearing, his
probation was revoked and he was sentenced to three years in prison
on a 1998 theft of property conviction, although he had never been
arrested on a 1998 charge. (Id.). Plaintiff identifies this as
his third false imprisonment claim. (Id.). According to
Plaintiff, when the theft of property charge allegedly occurred
back in 1998, he was actually arrested for disorderly conduct on
May 30, 1998 and was released on June 2, 1998. (Id.).

For relief, Plaintiff requests damages in the amount of
$4,000,000.00 and a pardon. (Id. at 13 & 15).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding in forma pauperis and was in
prison when he filed this action, the Court is reviewing
Plaintiff's amended complaint (Doc. 36) under 28 U.S.C. §
1915(e)(2)(B).[2] Under § 1915(e)(2)(B)(I), a claim may be dismissed

---

[2]The predecessor to this section is 28 U.S.C. § 1915(d). Even
though Congress made many substantive changes to § 1915(d) when it
enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to
state a claim analysis contained in Neitzke v. Williams, 490 U.S. 319,
109 S.Ct. 1827 (1989), was unaltered. Bilal v. Driver, 251 F.3d 1346,
1349 (11th Cir.), cert. denied, 534 U.S. 1044 (2001); Brown v.
Bargery, 207 F.3d 863, 866 n.4 (6th Cir. 2000). However, dismissal

as "frivolous where it lacks an arguable basis in law or fact."
Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32
(1989).  A claim is frivolous as a matter of law where, inter alia,
the defendants are immune from suit or the claim seeks to enforce
a right that clearly does not exist.  Id. at 327, 109 S.Ct. at
1833.  Judges are accorded "not only the authority to dismiss [as
frivolous] a claim based on indisputably meritless legal theory,
but also the unusual power to pierce the veil of the complaint's
factual allegations and dismiss those claims whose factual
contentions are clearly baseless."  Id.

Moreover, a complaint may be dismissed under 28 U.S.C. §
1915(e)(2)(B)(ii) for failure to state a claim upon which relief
may be granted "only if it is clear that no relief could be granted
under any set of facts that could be proved consistent with the
allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73, 104
S.Ct. 2229, 2232 (1984) (citation omitted); see Mitchell v.
Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)(noting that §
1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P.
12(b)(6)).  To avoid dismissal for failure to state a claim upon
which relief can be granted, the allegations must show
plausibility.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1966
(2007).  "Factual allegations must be enough to raise a right to
relief above the speculative level[.]"  Id. at 1965.  That is, the

---

under § 1915(e)(2)(B) is now mandatory.  Bilal, 251 F.3d at 1348-49.

allegations must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  <u>Id.</u> at 1966 (second brackets in original).  "[L]abels and conclusions and a formulaic recitation of a cause of action's elements" are insufficient for grounds for entitlement to relief.  <u>Id.</u> at 1965. However, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  <u>Jones v. Bock</u>, 549 U.S. 199, ___, 127 S.Ct. 910, 920-21 (2007).

## III.  Discussion.

The undersigned has carefully reviewed Plaintiff's amended complaint (Doc. 36), and has also examined the case file of a habeas corpus action which Plaintiff filed with this Court, namely CA 07-0556-BH-C (S.D. Ala. Nov. 30, 2007), in order to glean a better understanding of Plaintiff's various assertions.[3]  In the habeas action, Plaintiff challenged his January 12, 1999 conviction for theft of property, first degree.  (CA 07-0556-BH-C, Doc 6. at 2).  Plaintiff's petition was denied after it was determined that his claims were unexhausted.  (Doc. 23).   In the habeas action, the Court determined, after the Respondent answered (Doc. 14), that Plaintiff had one conviction, theft of property, first degree, on

---

[3]The Court takes judicial notice of its records.  <u>ITT Rayonier, Inc. v. United States</u>, 651 F.2d 343, 345 n.2 (5th Cir. July 20, 1981).

7

which he entered a counseled guilty plea on January 12, 1999. (Doc. 19 at 2). Plaintiff was initially sentenced to three years' imprisonment, but the sentence was split. (_Id._). Plaintiff was given credit for the fourteen days that he spent in jail, and was placed on formal probation. (_Id._). According to Plaintiff, his sentence was to have ended on or about December 29, 2001. (_Id._).

Plaintiff's habeas action reflects that three petitions to revoke his probation were filed with the state court. (_Id._ at 2-3). The first petition was either denied or withdrawn after Plaintiff spent about 16 days in jail in May 2000. (_Id._ at 2). On March 12, 2001, the second petition to revoke was filed, and Plaintiff was arrested on September 11, 2002. (_Id._ at 2-3). A hearing was held on September 20, 2002, which resulted in Plaintiff's probation sentence being extended for two years. (_Id._ at 3). On January 9, 2004, a third petition to revoke was filed, with the warrant being served on October 25, 2006. (_Id._). Plaintiff's probation was revoked on December 14, 2006, and he was ordered to serve his original three-year sentence in custody. (_Id._). No record was found of Plaintiff appealing the revocation of his probation. (_Id._).

In Plaintiff's habeas action, a Report and Recommendation was entered on November 21, 2007, recommending the dismissal of the action without prejudice so Plaintiff could exhaust his state court remedies. (_Id._ at 19). The Court went on to advise Plaintiff that

he should immediately file a Rule 32 collateral attack in Mobile County Circuit Court in order to toll the statute of limitations. (<u>Id.</u> at 8, n.2).[4]   The Report and Recommendation was adopted, Judgment was entered, and no appeal was taken.  (Docs. 22 & 23).[5]

## A. Claims Against Judges Kendall and Stewart.

In this action, Plaintiff is challenging the extension of his probation sentence and then the revocation of his probation sentence, which, respectively, caused him to serve a longer probation sentence and to serve a custody sentence.[6]  A challenge in a § 1983 action to a conviction or sentence is governed by the decision in <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364 (1994). <u>See</u> <u>infra</u>.  The <u>Heck</u> decision has also been applied to probation and parole revocations.  <u>Jackson v. Vannoy</u>, 49 F.3d 175, 177 (5th Cir.), <u>cert. denied</u>, 516 U.S. 851 (1995); <u>Williams v. Massey</u>, No. 05-0087-CG-M, 2007 WL 496763, at *1 (S.D. Ala. Feb. 13, 2007) (Heck's "principles apply to revocations of probation and

---

[4]Plaintiff indicates that he has filed a Rule 32 petition, which was received by the Circuit Court on December 27, 2007. (Doc. 23).

[5]Some of the same claims that Plaintiff makes in the present action were raised in his habeas petition, CA 07-0556-BH-C, which was filed after he filed this present action, CA 07-0167-CG-B.

[6]Plaintiff claims that Defendant Judge Stewart tried and sentenced him on a 1998 theft of property charge, which does not exist.  This issue was resolved in the habeas Report and Recommendation.  (Doc. 19 at 9 n.4).  Apparently, Plaintiff was indicted in 1998, but he pled guilty on January 12, 1999.  (<u>Id.</u>). The Court concluded that the charge to which Plaintiff pled was properly assigned a 1998 number.  (<u>Id.</u>).

revocations and denial of parole.")(unpublished); <u>accord</u> <u>McGrew v.</u> <u>Texas Bd. of Pardons & Paroles</u>, 47 F.3d 158, 161 (5th Cir. 1995) (dismissing an action challenging the extension of his sentence and erroneous factual findings pursuant to <u>Heck</u> because the sentence imposed after the revocation of his mandatory supervision had not been invalidated).  "[B]efore dismissal on ripeness grounds under <u>Heck</u>[]" occurs, the Eleventh Circuit indicates that threshold issues, such as absolute immunity from damages, should be decided so in the event that the same action is filed again after invalidation of a restraint occurs, a defendant who is entitled to absolute immunity would not have to respond to the lawsuit.  <u>Abella</u> <u>v. Rubino</u>, 63 F.3d 1063, 1065 n.3 (11th Cir. 1995).  Therefore, the Court will first discuss those Defendants for whom absolute immunity from damages is available as a defense.  The Court recognizes that there may be other grounds on which to the dismiss the claims against these Defendants, e.g., the application of <u>Heck</u> <u>v. Humphrey</u> decision; however, those grounds are not being discussed because the undersigned finds that these Defendants are entitled to absolute immunity.

**A.  <u>Judge Kendall</u>.**

In a § 1983 action, a judge is entitled to absolute judicial immunity from damages for those acts taken while he was acting in his judicial capacity unless he acted in the "'clear absence of all jurisdiction.'" <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57, 98 S.Ct.

10

1099, 1104-05 (1978) (quotation omitted); Simmons v. Conger, 86
F.3d 1080, 1084-85 (11th Cir. 1996) (same).  A judge is entitled to
this immunity even though his acts were in error, were malicious,
or were in excess of his jurisdiction.  Stump, 435 U.S. at 356, 98
S.Ct. at 1104.

    Plaintiff alleges that he appeared before Defendant Judge
Kendall for his initial guilty plea, was sentenced by Defendant
Judge Kendall to three years' probation, appeared again before
Defendant Judge Kendall on a petition to revoke on September 17,
2002, and had his three-year probation sentence reinstated by
Defendant Judge Kendall.  (Doc. 36 at 5, 7 & 10).   Conducting
hearings, taking guilty pleas, and imposing criminal sentences are
functions that a judge typically performs.  Thus, the first prong
of the Stump immunity test requiring a judge to have acted in his
or her judicial capacity is met.

     The next prong of the Stump test is whether Defendant Judge
Kendall acted in the "'clear absence of all jurisdiction.'"
Simmons, 86 F.3d at 1085 (quoting Stump, 435 U.S. at 357).   An
Alabama circuit court judge has exclusive original jurisdiction
over all felony prosecutions.  ALA. CODE § 12-11-30(2) (1996).  And
the crime of theft of property, first-degree, for which Plaintiff
was convicted, is a Class B felony.  ALA. CODE § 13A-8-3 (2006).

    Clearly, Defendant Judge Kendall was acting within his
jurisdiction as a circuit court judge when he received Plaintiff's

guilty plea to theft of property, first degree, imposed sentence on Plaintiff, and extended Plaintiff's probation.  (Doc. 36 at 5, 7 & 10).  The Court recognizes the fact that Plaintiff alleges that both Defendant judges made errors in his criminal proceedings.  However, an error by a judge in a ruling or in the handling of a case does not divest a judge of jurisdiction over an action before him or her.  See Stump, 435 U.S. at 363-64, 98 S.Ct. at 1108-09 (holding that judicial immunity extends to judicial acts that may contain error).  Because both prongs of the Stump test are satisfied, Defendant Judge Kendall is entitled to absolute judicial immunity from Plaintiff's damages claims.  Accordingly, Plaintiff's damages claims against Defendant Judge Kendall are frivolous as a matter of law and are due to be dismissed.

### B.  **Judge Stewart**.

Defendant Judge Stewart conducted a probation revocation hearing on December 14, 2006.  She revoked Plaintiff's probation and imposed a three-year custody sentence.  (Doc. 36 at 8).  Plaintiff contends that Defendant Judge Stewart's actions were unlawful because he had finished serving his probation sentence.  Notwithstanding Plaintiff's assertions, it is clear that his contact with Defendant Judge Stewart was in her judicial capacity.  A circuit court judge typically conducts revocation hearings and imposes sentences.  Thus, the first prong of the Stump immunity test, which requires that the judge be acting in her judicial

12

capacity, is satisfied. <u>Simmons</u>, 86 F.3d at 1085.

The second prong of the <u>Stump</u> test inquires into whether Defendant Judge Stewart acted in the "'clear absence of all jurisdiction.'" <u>Simmons</u>, 86 F.3d at 1085 (quoting <u>Stump</u>, 435 U.S. at 357, 98 S.Ct. at 1105). Like Defendant Judge Kendall, Defendant Judge Stewart is an Alabama circuit court judge. Thus, she has exclusive original jurisdiction over all felony prosecutions. ALA. CODE § 12-11-30(2)(1996). The crime of theft of property, first-degree, for which Plaintiff was convicted, is a Class B felony. ALA. CODE § 13A-8-3 (2006). Accordingly, the undersigned finds that Defendant Judge Stewart was acting within her jurisdiction. Because both prongs of the <u>Stump</u> test are satisfied, Defendant Judge Stewart is entitled to absolute judicial immunity from Plaintiff's damages claims. Accordingly, Plaintiff's claims against Defendant Judge Stewart are frivolous as a matter of law.

**B. Claims Against Assistant District Attorney Tillman.**

Defendant Tillman is charged with allowing the December 14, 2006 probation revocation hearing to proceed without Plaintiff's accuser, the probation officer, being present, and with submitting false information to obtain an illegal conviction. (Doc. 36 at 11-12). Typically, it is not a prosecutor's function to determine if a hearing will proceed. Rather, a judge will determine if there will be a hearing. Thus, this claim fails to state a claim upon which relief can be granted.

Additionally, Plaintiff has not identified the false information that was allegedly submitted and resulted in the revocation of his probation, and the custody sentence.  The Court surmises that the "false" evidence that Plaintiff alludes to is the new burglary, third degree, charge or the charge that Plaintiff absconded from Defendant Davis's supervision; however, the Court is not certain given the vagueness of Plaintiff's assertions.  (<u>See</u> Doc. 36 at 14).  Such vague and conclusory allegations of submitting false information are not sufficient and as a result, they fail to state a claim upon relief can be granted.  <u>Fullman v. Graddick,</u> 739 F.2d 553, 556-57 (11th Cir. 1984) (finding that vague and conclusory claims are subject to dismissal); <u>accord</u> <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1368 (11th Cir. 1998) (finding even though the courts give leniency to <u>pro</u> <u>se</u> litigants, the courts will not act as a plaintiff's <u>de facto</u> attorney or rewrite a deficient complaint).  Therefore, these claims against Defendant Tillman are due to be dismissed for failure to state a claim.

An alternate basis for the dismissal of the damages claims against Defendant Tillman is prosecutorial immunity.  A prosecutor is entitled to absolute prosecutorial immunity from damages in a § 1983 action for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the government's case.  <u>Imbler v. Pachtman</u>, 424 U.S.

14

409, 430-31, 96 S.Ct. 984, 995 (1976); <u>Wahl v. McIver</u>, 773 F.2d 1169, 1173 (11th Cir. 1985); <u>Fullman</u>, 739 F.2d at 558-59.

In recognizing that the § 1983 statute provides no immunities, the Supreme Court looks to common law and the functions being performed to determine if the prosecutor is to be accorded absolute immunity for his actions. <u>Malley v. Briggs</u>, 475 U.S. 335, 342, 106 S.Ct. 1092, 1096-97 (1986). The acts of submitting information and appearing in court at a hearing are generally part of the judicial process. A prosecutor is therefore protected with absolute immunity in order not to "impair the performance of a central actor in the judicial process." <u>Id.</u> at 343, 106 S.Ct. at 1097. Accordingly, Defendant Tillman is entitled to absolute immunity from damages for the acts taken in presenting the State's case, that is, appearing in court and submitting evidence (Doc. 36 at 11-12). Plaintiff's claims against Defendant Tillman should, therefore, be dismissed as frivolous. <u>Imbler</u>, 424 U.S. at 430-31, 96 S.Ct. at 995.

**C. Claims Against Criminal Defense Counsel Thomas Walsh.**

Plaintiff alleges that Defendant Walsh rendered ineffective assistance of counsel when he did not point out to the court that no accuser was present at December 4, 2006 probation revocation hearing, thereby allowing Plaintiff to be sent to prison for a crime for which he was never convicted. (Doc. 36 at 12). Defendant Walsh was appointed by the court to represent Plaintiff.

15

(Id. at 8).  Plaintiff does not allege that Defendant Walsh acted
under color of state law.  A necessary element in a § 1983 action
is that the defendant have acted under color of state law when the
alleged constitutional deprivation was committed.  Parratt v.
Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981), overruled
on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).  In
a § 1983 action, court-appointed, criminal defense counsel does not
act under color of state law in the absence of a conspiracy.  Polk
County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 453 (1981).

        In Polk County, the Supreme Court reasoned that "[e]xcept for
the source of payment, [the] relationship [between criminal
defendant and defense counsel is] identical to that existing
between any other lawyer and client."  Id. at 318, 102 S.Ct. at
449.  The Polk County Court concluded that "[t]his [relationship]
is essentially a private function, traditionally filled by retained
counsel, for which state office and authority are not needed."  Id.
at 319, 102 S.Ct. at 450 (footnote omitted).  The Court determined
that court-appointed, criminal defense counsel carried out the
traditional functions of a lawyer representing a criminal defendant
and therefore did not act under color of state law.  Id. at 325,
102 S.Ct. at 453.  Thus, the Court ruled that the § 1983 complaint
must be dismissed against criminal defense counsel for lack of
state action.  Id.

        Based on the amended complaint's allegations, Defendant Walsh

did not act under color of state law. Accordingly, Plaintiff has failed to state a claim upon which relief may granted against Defendant Walsh. And, after considering the context of the claim, and that Plaintiff's extension of probation or revocation of probation, has not been invalidated, see infra, the undersigned determines that this claim is frivolous.

**D. Claims Against Probation Officers Roderick Davis and Pamela Pettis.**

Plaintiff claims that Defendant Davis allowed his initial three-year probation term, which commenced on January 12, 1999, to continue after it had ended on January 11, 2002, when he placed a probation hold on Plaintiff on September 11, 2002, after the probation term had expired. (Doc. 36 at 6 & 10). Plaintiff also claims that his next probation officer, Defendant Pettis, submitted false documentation to the clerk or to Defendant Tillman, stating that Plaintiff had absconded supervision while under Defendant Davis's supervision in 2001,(id. at 14), and that she placed a probation hold on Plaintiff after his October 25, 2006 arrest for burglary, third degree. (Id. at 8). Furthermore, Plaintiff claims that neither Defendant Pettis nor Defendant Davis were at Plaintiff's probation final revocation hearing. (Id. at 8).

The disposition of the claims against Defendants Davis and Pettis is controlled by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994). In Heck, a prisoner filed a § 1983 damages action against the prosecutors and

17

investigator in his criminal case for their actions that resulted in his conviction.  The Supreme Court analogized the plaintiff's claim to a common-law cause of action for malicious prosecution, which had as a required element that the accused prove the termination of the prior criminal proceeding for the accused.  Id. at 484, 114 S.Ct. at 2371.  The Heck Court opined:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, (footnote omitted), a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87, 114 S.Ct. at 2372-73.

Thus, if Plaintiff's damages claims against Defendant Davis and Defendant Pettis would have the effect of invalidating the decisions to extend Plaintiff's probation and revoke his probation if the Court were to rule favorably on the claims, then Plaintiff

must demonstrate that those decisions have been invalidated in order to avoid dismissal of these claims. On the other hand, if Plaintiff's § 1983 damages claims will not have the effect of invalidating the decisions to extend Plaintiff's probation, and revoke his probation if the Court were to rule favorably on them, then his claims may proceed in this action unless another bar exists to the claims proceeding. Id. at 487 n.7, 114 S.Ct. at 2373 n.7.

Based on the claims alleged against Defendant Davis and Defendant Pettis, the Court concludes that if the Court were to rule favorably for Plaintiff on these damages claims, such a ruling would undermine the state court decisions which extended Plaintiff's probation term and revoked his probation sentence. That is, if the Court found that Defendant Davis placed an unconstitutional probation hold on Plaintiff after his initial probation sentence expired, a favorable ruling would undermine the state courts' decisions to extend Plaintiff's probation sentence and revoke his probation. Further, if the Court agreed with Plaintiff that Defendant Pettis' assertion that Plaintiff absconded supervision was false, then the Court's favorable ruling would undermine the decision to revoke Plaintiff's probation and impose a custody sentence. Additionally, if the Court were to find that a probation officer needed to be present at the last revocation hearing in order for there to be sufficient evidence to revoke

19

Plaintiff's probation, then such a favorable ruling would undermine the state court's decision to revoke Plaintiff's probation and impose a custody sentence.

Plaintiff has not shown that the decisions to extend his probation and revoke his probation have been invalidated. In fact, in his amended complaint, Plaintiff indicates that the decision to extend his probation and revoke his probation sentence have not been invalidated. (Doc. 36 at 14-15). It is also noteworthy that Plaintiff's habeas petition was dismissed so that he could exhaust his state court remedies.[7] (Docs. 21 & 22)  In the Report and

_____

[7]Plaintiff's habeas action provides additional information concerning his claims. The docket sheet for the revocation hearing based on a domestic offense is attached to the Respondent's Answer in Plaintiff's habeas action. (CA 07-0556-BH-C, Doc. 14, Ex. 3 at 3). A writ for Plaintiff's arrest for probation revocation was issued on March 13, 2001. (Id.). The arrest warrant was served on September 12, 2002. (Id.). A hearing was conducted by Defendant Judge Kendall on September 20, 2002. Plaintiff's probation was not revoked; however, it was extended by two years, as opposed to three years as claimed by Plaintiff. (Id.); see Owens v. State, 728 So.2d 673, 680 (Ala. Crim. App. 1998) (ruling that the issuance of an arrest warrant during a probation term tolls the probation term until the warrant is served and a hearing is held). In Plaintiff's habeas petition, the claim arising from the extension of his probation sentence was identified as a claim for double jeopardy. (Doc. 1 at 3; Doc. 6 at 4). The habeas action does not reflect that the decision to extend Plaintiff's probation has been invalidated.

With regard to Plaintiff's final revocation hearing, Respondent's Answer reflects that a writ for Plaintiff's arrest was filed on January 12, 2004. (Doc. 14, Ex. 4 at 3). On October 26, 2006, the warrant was served. (Id.). Plaintiff's probation was revoked on December 14, 2006, and he was sentenced to three years' imprisonment on January 10, 2007. (Id.). There is nothing to suggest that the decision to revoke his probation and impose a custody sentence has been invalidated.

Recommendation Magistrate Judge Cassady reasoned:

> Therefore, Henderson's charge to which he pled guilty on January 12, 1999 was properly assigned a 1998 case number, petitioner's "confusion" notwithstanding.   Petitioner's probationary period began to "run" on January 12, 1999, not January 12, 1998, and that period was extended by two years on September 20, 2002, based upon a petition to revoke probation filed on March 12, 2001.   The pertinent questions become from what date the extended period was to "run" and whether Henderson was still on probation at the time the State of Alabama petitioned the trial court to revoke his probation on January 9, 2004.   Those are questions which should, in the first instance, be addressed by the state courts of Alabama.

(Doc. 19 at 9 n.4).   The fact that Plaintiff's claims regarding the decisions to extend his probation and revoke his probation have not been presented to the state courts is further evidence that those decisions have not been invalidated.   Accordingly, the undersigned concludes that Plaintiff's damages claims against Defendant Davis and Defendant Pettis fail to state a claim upon which relief can be

---

The docket number for the revocation of probation is CC 1998-003651.72.   Except for the numbers after the decimal, this is the same case number on all of the documents produced by Respondent that stem from Plaintiff's indictment on September 30, 1998 for theft of property, first degree, CC 1998-003651.00. (Id., Ex. 1 at 3).   The numbers after the decimal appear to change with each alleged violation of his probation sentence. For example, the case number for the prank complaint is CC 1998-003651.70; the case number for the "domestic" charge is CC 1998-003651.71.; and the case number for his last revocation petition is CC 1998-003651.72.   It appears that all of the petitions to revoke Plaintiff's probation are based on the probation sentence that he received as a result of his guilty plea to theft of property, first degree, on January 12, 1999.   (Id., Ex.2 at 3).

granted.   Because the claims are not ripe, they are due to be dismissed with prejudice.   Abella, 63 F.3d at 1065 (noting that Abella "could bring his . . . damages claims in the future should he meet the requirements of Heck").

**E.  Plaintiff's Request for a Pardon.**

With respect to Plaintiff's request for a pardon, the Court observes that this type of relief is in the nature of habeas relief and as such, is not available through a § 1983 action.   Id. at 1066.   More importantly, a pardon request can only be granted by the Alabama Board of Pardons and Paroles.   ALA. CODE § 15-22-36(a) (2004) ("In all cases, except treason and impeachment and cases in which sentence of death is imposed and not commuted, . . ., the Board of Pardons and Paroles shall have the authority and power, after conviction and not otherwise, to grant pardons and paroles and to remit fines and forfeitures.").   Accordingly, Plaintiff's request for a pardon in this action is due to be dismissed as frivolous.

**IV.  Conclusion.**

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and (ii), because Plaintiff's claims are either frivolous or fail to state a claim upon which relief can be granted.

The attached sheet contains important information regarding

objections to the Report and Recommendation.

**DONE** this **18ᵗʰ** day of **August, 2008**.

      _____/s/SONJA F. BIVINS_____
      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.